### In re M. M. W. CO., Inc.
### No. 44446.

District Court, E. D. New York.
June 5, 1944.

712

Levin & Weintraub, of New York City, for trustee.

Duberstein & Schwartz, of Brooklyn, N. Y., for Tappen Estates Corporation.

BYERS, District Judge.

The trustee seeks to review a referee's order denying a turnover motion except as to certain items not now in dispute, the effect of which is to award to the landlord of the bankrupt certain personal property purchased by the latter for business use in connection with a restaurant operated by it at 2617 Emmons Avenue, Brooklyn (Sheepshead Bay) known as Tappens Restaurant.

The items are listed in finding 6 and consist entirely of appropriate articles of equipment such as ranges, boilers, steam table, refrigerator motor, and the like.

The facts are not in dispute and may be conveniently summarized as follows:

On January 27, 1942, the parties executed a lease of the restaurant premises for the term beginning March 1, 1942, and ending February 28, 1943, before which last-mentioned date the bankrupt surrendered the premises and all the equipment to the landlord, the possession thereof has remained in the latter since that time.

An involuntary petition in bankruptcy was filed on April 22, 1943, and adjudication followed.

The said lease in paragraph 33 provided in substance that the tenant should have the right to use all trade fixtures, equipment, etc., located in or upon the demised premises and used in the operation of the restaurant and hotel business, an inventory of which had been made in connection with an earlier lease later to be referred to; the tenant agreed to keep such property in good order and repair and to make replacements to cover breakage or loss, and to surrender up the same at the termination of the lease "and all replacements thereof or substitutions therefor" in as good condition, etc., ordinary use being excepted; the tenant agreed not to remove any of said items from the demised premises without the landlord's consent.

When the lease was entered into, the items now claimed by the trustee were in the premises and were comprehended by the said paragraph 33; they constituted replacements of earlier similar equipment which had been discarded by the tenant as worn out or otherwise unsatisfactory so that for present purposes the articles now in controversy can be treated as though the lease in question constituted the first contract of the parties; clarity will be promoted by that approach, because it is not disputed that the replacements and substitutions now claimed by the trustee were in the premises and constituted a part of the restaurant equipment at the time that the said last-mentioned lease was entered into.

That is, there were no replacements during the term of the lease dated January 27, 1942, and none of these chattels was acquired after that date.

It is true, however, that there had been a prior agreement between the parties constituting an extension of an earlier lease, namely, a writing dated August 26, 1940, providing for the extension of the then existing lease so as to cover the period from January 1, 1941, to February 28, 1942; the lease to which the extension agreement referred was one dated April 10, 1940, for the term commencing May 1, 1940, and ending December 31, 1940. Paragraph 26 thereof was similar in scope and purpose to paragraph 33 of the lease which was surrendered in February of 1943, to which reference has been made; that is to say, under its provisions the tenant had the right to use all trade fixtures and equipment and personal property in the demised premises used in the operation of the restaurant and hotel business, an inventory whereof was attached to the lease, and the tenant agreed to keep such equipment in good order and repair "and to pay for and replace or otherwise make good any and all damage to or breakage or loss of said fixtures, equipment", etc., and to surrender and deliver up the same at the expiration of the lease in good order and condition, etc., and it was agreed that no representations were made concerning the condition or adequacy of these articles but that the tenant took them "as is".

As has been stated, it was during the extended period of the first lease that renewals and replacements were made by the

bankrupt, and they are now claimed by the trustee on the theory that the respective leases should be construed as chattel mortgages of these articles and, because they were not filed as such, the landlord is not entitled to retain the items in question as against the creditors of the bankrupt.

The referee has found that while the restaurant was being operated during the spring of 1941, the bankrupt destroyed, discarded or disposed of some of the original items of this kind, and that the present ones constitute replacements and substitutions of articles described in the inventory attached to the first lease; and that it was the intention of the parties as embodied in the said written agreements, that the bankrupt was to maintain a fully equipped restaurant and ultimately to return and surrender it as such to the landlord.

He has concluded, as a matter of law, that the title to the said items of replacement and substitution vested in the landlord upon installation, and they did not constitute additional security for the payment of rent under the leases, and that the latter instruments are not to be construed as chattel mortgages and therefore void for failure to file.

Since the findings of fact are not in controversy, the only question raised upon this motion is whether the referee has properly disposed of the controversy as a matter of law, and it seems to this Court that he has.

■ The trustee relies upon In re American Cork Industries, 2 Cir., 54 F.2d 740, 741, which is clearly distinguishable since the lease there under examination in terms provided that the machinery, equipment, appurtenances and fixtures to be installed by the tenant were to be deemed merged in the freehold and to become a part of the realty "only for the purpose of additional security for this lease." It should not require extended exposition to demonstrate that nothing of the kind was agreed to by this landlord and this tenant. This tenant rented a fully equipped restaurant and agreed to maintain and operate it and to surrender it at the end of its term with the equipment intact, and that is all that has been done; while in a sense the replacements and substitutions, rendered

necessary through the obsolescence of portions of the equipment arising from use, were acquired after the first lease was made, the purpose of the covenant contained in both the first and second leases was not to extend the scope or reach of the lease, but merely to assure that the landlord should receive back that which it had rented to the bankrupt; the stipulation to that effect cannot be tortured into a covenant creating additional security for the payment of rent, unless the plain terms of the contract are to be disregarded.

■ Nor was this an after-acquired property clause within the rulings which declare the same to be void as against creditors. The items in dispute were not after-acquired, so far as the lease of January 27, 1942, was concerned.

It seems clear also that the decision of this controversy does not turn upon the rule held to be applicable in cases dealing with leases which provide that machinery and fixtures are deemed to become a portion of the realty, for no one asserts that such is the character of the chattels here in controversy.

That there is nothing inequitable in awarding possession of chattel replacements, to a lessor, was decided in Equity receivership cases, i.e., Pennsylvania Steel Co. v. New York City Ry. Co., C.C., 165 F. 472, American Brake Shoe & Foundry Co. v. New York Railways, D.C., 293 F. 612, at page 617, and Pennsylvania Steel Co. v. New York City Ry. Co., D.C., 219 F. 939, at 960, which the trustee seeks to distinguish on the ground that they all have to do with public utilities, i.e., street railways, in the continued operation of which there is an obvious public interest.

The decisions on the subject of replacements, however, did not turn upon that consideration, but upon the manifest equity of construing the contracts of the parties according to their clear intent and purpose, which was to assure to the lessor the preservation of the leased property.

Error in the disposition of this motion by the referee not having been shown, the petition to review will be denied.

· Settle order.